Judge Nicholas
delivered the Opinion of the Court.
This is an action, brought by the appellee, for the benefit of Wheat, on an indenture of apprenticeship, in which he obtained a verdict and judgment against the appellant.
_ _ The declaration sets forth the indenture, signed by plaintiff and defendant, “ whereby the plaintiff, as clerk of the county court of Adair, by virtue of an order of said court, put Mason Wheat, a poor boy, as an apprentice to the defendant; with the defendant to dwell during the term of twelve years, or until the said Mason Wheat should arrive at the age of twenty one years ; and during said term, the said Wheat, the said defendant, in all his lawful commands, well, gladly and truly to obey ; and the said defendant, on his 'part, covenanted to teach and instruct the said Wheat, the art and mys ry of the tanning business,” with other usual covenants, as prescribed by the statute.
The declaration avers, that the term of apprenticeship has expired, and a failure of the defendant to comply with any of the said covenants on his part; but without any averment that Wheat had remained with *130 the defendant daring the term, or .otherwise complied with any of the stipulations made, in his behalf, by the clerk.
Indentures of apprenticeship, stating that the apprentice had been placed in custody of the master,the presumption is,that he so remained duringtheterm; and, in declaring against the master for fail— ingto teachhim, it is not necessary to aver, as the perform anee of a condition precedent, that he did so remain. If the apprentice, by absconding, or otherwise, prevented the master from teaching him,themas ter must show that defence by ,plea and proof.
A bill of exceptions to a decision, that a particular question might be put to a witness, must show what testimony had beeu previously given — otherwise this court cannot say the question was improper.
For the want of such averment, it is contended the declaration is bad. We do not think so. The performance by the defendant, is not expressly based, by the terms of his covenant, upon the condition of a fulfilment of those stipulations on behalf of Wheat. The indenture recognises, that Wheat was placed in the possession of defendant, and as the law rendered it the duty of Wheat to fulfil those stipulations, and authorized the defendant to coerce a compliance with them, the rational and legal presumption is, that they were complied with. Consequently, there would be no propriety in construing by implication merely, those stipulations into a condition precedent, requiring an averment of their performance, before the plaintiff could shew a breach of the covenants, on the part of the defendant. It would seem more proper, that the defendant should avoid the effect of the presumption growing out of the transaction, and, by averment on his part, shew that the apprentice, by absenting himself or otherwise, had prevented him from performing his covenant, if such were the fact. Either of the stipulations may as well be treated in the nature of a condition precedent, as any of the others. But it would be manifestly improper to treat them all in that way. In suing on a covenant, which recognises the. reception and hire of a slave for a given time, to clothe the slave and teach him something during that time, it surely would not be necessary to aver that the slave remained with the covenantor, in order to shew a sufficient breach of the covenant to clothe and teach. Neither can such averment be necessary here. For there must be here a similar presumption that the apprentice remained during the term with his master.
In the progress of the trial, upon an issue of covenants performed, the court permitted the plaintiff to ask a witness, whether Wheat was a good workman in cur *131 rying leather, ancl this permission is relied on as error. It might be a sufficient answer to this objection, that the bill of exceptions does not shew what-proof had been given when the question was asked; so that it is impossible for us to say the court erred in permitting it to be answered, even though we should, think it improper as original proof on the part of the plaintiff, under the issue.
The phrase ‘the' art and mystery of the tanning business,’ will include the art of currying, or not, according to the general senseintheplace whereitisused. Xu this state, ‘the tanning business’ is generally understood as the entire pro cess of malting leather ; — and, therefore, upon the trial here,of .an issue, whether a covenant to teach that business, was performed, it is not . improper to ask a witness whether the apprentice was a good workman in cur. rying leather.
A covenant to tfcean\rtPand mystery, binds folmakThim^s good a workaTthM^genfa-ally are who ¡eTmed^^ir however,theap deficient in capacity as not to be able to learn the trade, this will excnse the master: but if such excuse exist, it is for him to aver and prove it; it will not be presumed in the absence of proof.
But we do not see how such a question could have been illegal under any state, of proof. It may be, as contended, that the art of currying is exercised in many places, as separate and distinct from the art and mystery of tanning. But it is certainly equally true, that, in others, they are blended and considered as but one trade ; and the term tanning will include currying or not, in common parlance, or in contracts, according to the general practice of any particular community. The fact that the two are many times carried on together as one and the same trade, will at least warrant us in saying, that there is no absolute incompatibility in the idea of their being one and the same. If we are bound judicially to interpret such a covenant according to our knowledge of the general mode of conducting such business in this state, we should say that they are most generally blended, and that, according to common understanding, the trade and business of a tanner is the trade and business of making leather, winch, as we believe, necessarily, or at least ordinarily, requires curry-mg. •
The court, at the instance of plaintiff, instructed the jury, “that, to understand the art and mystery of tanning, is to be a workman of as much skill as tanners generally possess who have regularly learned the trade;” —also, “ that though defendant was not bound to make Wheat a first rate workman, yet he was bound to make him a workman as-good and skilful as tanners generally are who have regularly learned the trade.” To the first of these instructions we do not find any very just exception. The skill which tanners generally possess, *132 who have regularly learned the trade, is not more than is necessary to understand the art and mystery of tanning, and is, therefore, only that degree of skill which the defendant was bound to teach, under his covenant jeacjj tf¡e ar(- ant| mystery of tanning. In other words, we do not understand the language used as importing more than ordinary skill or information in’ the trade. To the other instruction it is objected, that it should have been accompanied with a qualifying proviso, that the apprentice had sufficient capacity to learn: There can be no doubt that the master was not bound to impart to the apprentice the proper degree of skill at all events, whether he had the necessary capacity or not; but it does not necessarily follow, that the instruction should have been accompanied with any such qualification. It does not appear that there was. any testimony conducing to shew that the apprentice was not endowed with ordinary capacity. In the absence of such proof, the presumption is that he had such capacity, and that is all that is requisite to acquire, in twelve years apprenticeship, ordinary skill in any common trade, such as that of a tanner. If the defendant had any such excuse for the non-performance of his covenant, it rested with him to prove it, and not with the other side to prove the absence of any such excuse.
Where a lad is foam^a'0trade* and the indenthaTthe master shall teach him stery14it*"is sot enough that fords hiti/sufficient opportumty Sf instruction to enable lum to lea™ h; dutyofthemasthe ^apprentice to follow his timís butto'endpavqr to keep him in correct habits generally,and taire care that he applies himself to learn the trade.
*132 The defendant moved for, but the court refused to g'lvei the following instruction : “that if the jury believed from the evidence, that the defendant afforded said Wheat a sufficient opportunity, and had given him sufficient instruction to enable him to learn the art of tanning, then, as to that part of the covenant, they should find for the defendant, whether the said Wheat became a first rate workman or not.” If this instruction imported nothing more, than that the defendant was boqnd to impart only as apprentjce was capable of receiving, it would be free from exception. But the defendant might have done all that the instruction asked for, implies that he should have done, and still have left undone an important part of kis duty towards the apprentice. It was his duty, not merely to have afforded the requisite opportunity of *133 learning, and to give the necessary instruction, but it was his duty, furthermore, to have taken the proper measures to make the apprentice avail himself of that opportunity. He should not have been left, as the instruction imports the master had a right to leave him, to his own volition, whether he would avail himself of that opportunity or not. It is because children have not the necessary discretion for the government of their conduct, — because it would be unsafe to leave them to the exercise of their own unrestrained volition, that the law has empowered the county courts to apprentice them to persons of sufficient age and discretion, and authorized their masters to use the nécessary and proper coercion to control that volition, and compel them to such habits of industry, application and sobriety, as are requisite to the acquisition of sufficient skill in the master’s trade.
If a hill of exceptions, to the refusal of a ct. to give instructions, does not setoutsomeevidenoe to which the instructions would apply, they may be deemed irrelevant, and this court will not decide that the refusal was erroneous.
We do not wish to be understood, that the covenant binds fhe master in every event or situation, to compel an apprentice of sufficient capacity, to learn his trade. We mean only, that when sued for a failure of his duty in this particular, he should satisfy the jury that he used the necessary and proper exertions to make him learn; that is, that he has acted towards him, in the matter of coercion, as an ordinarily prudent and sensible parent would act towards his own child.
Bqt should we be mistaken in' this interpretation of the import of the instruction asked for, and the words,’ “had given him sufficient instruction to enable him to learn the art,” do import that the requisite coercion had been used, to make the apprentice receive the full benefit of that instruction, by sufficient practice under it, still we cannot say that the court erred in refusing the instruction. It does not appear from the bill of exceptions, that any testimony had been given, conducing to .shew that the master had so instructed the apprentice. In the absence of such proof, the court was clearly right in refusing the instruction, and we cannot therefore say, from the manner in which the point is presented by the record, that the court erred.
Judgment affirmed, with costs.